IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


JACKIE LEE STRINGER          )
            )
v.                     )      No. 3:14-1255
            )
CAROLYN W. COLVIN,       )
     Acting Commissioner of    )
     Social Security          )


To: The Honorable Aleta A. Trauger, District Judge


**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided by Title II, 42 U.S.C. §§ 416(i) and 423(d), and Title XVI, 42 U.S.C. §§ 1381 et seq., of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 9), to which Defendant has filed a response (Docket Entry No. 10). Upon consideration of the parties' filings and the administrative record, and for the reasons set forth below, the Court recommends that Plaintiff's motion for judgment on the administrative record be denied and the Commissioner's decision be affirmed.

# I. INTRODUCTION

In August 2010, Plaintiff protectively filed for DIB and SSI.  See Transcript of the Administrative Record (Docket Entry No. 7),[1] at TR 89-90.  She originally alleged a disability onset date of January 5, 2007, TR 89-90, but later amended this date to July 29, 2010.[2]  TR 255.  She asserted that she was unable to work because of nerve damage, neck and back problems, knee problems, and bipolar disorder.  TR 97-98.

Plaintiff's applications were denied initially and upon reconsideration.  TR 93-98 and 102-107.  Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Judge Scott Shimer on November 1, 2012.  TR 37.  On December 7, 2012, the ALJ issued a decision unfavorable to Plaintiff.  TR 12-35. On March 27, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, TR 1-6, thereby making the ALJ's decision the final decision of the Commissioner.  This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c).

# II. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on December 7, 2012.  TR 12-30.  Based upon the record, the ALJ made the following enumerated findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "TR" followed by page number(s).

[2] On April 24, 2007, Plaintiff filed a prior application for DIB and SSI and received an unfavorable hearing decision on July 28, 2010.  TR 67-88.  Plaintiff did not appeal that decision, rendering it binding upon Plaintiff and the SSA.  TR 15.  In the prior decision, Plaintiff was found to have a residual functional capacity for medium duty work.  TR 74.

2.   The claimant has not engaged in substantial gainful activity since January 5, 2007, the [originally claimed] alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease; degenerative joint disease of the knees; obesity; anxiety; and panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

***

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

***

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is limited to occasional lifting and/or carrying of twenty pounds; frequent lifting and/or carrying of ten pounds; standing and walking for six hours in an eight-hour workday and for one hour at a time; sitting for six hours in an eight-hour workday and for four hours at a time; occasional balancing, stooping, kneeling, crawling, and climbing of ramps and stairs; no crouching or climbing of ladders, ropes, or scaffolds; no working at unprotected heights or around unguarded, moving machinery; and no commercial driving. Mentally, the claimant can perform simple, routine, repetitive tasks; respond appropriately to supervisors and coworkers in a job that does not require independent decision-making; and have interpersonal contact that is only incidental to work performance.

***

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

***

7.   The claimant was born on August 9, 1966, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

*** 

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 5, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 18-29

# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the Administrative Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). See Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in

context of Social Security cases); Kyle v. Comm'r Soc. Sec., 609 F.3d 847, 854 (6th Cir. 2010); Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)); Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 477 (6th Cir. 2003); Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process, Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir.1991), and a reviewing court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). See, e.g., Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. See 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. See Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)). First, the claimant must show that he or she is not engaged in "substantial gainful activity" at the time disability benefits are sought. Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he or she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). See also Edwards v. Comm'r of Soc. Sec., 113 Fed. Appx. 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work

experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment.  Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry.  See Combs, supra; Blankenship v. Bowen, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him or her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to their past relevant work. Combs, supra.  "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere.  See 42 U.S.C. §§ 423(d) (2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir.1988).  At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant.  Cruse, 502 F.3d at 539; Jones, 336 F.3d at 474.  If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled.  Combs, supra.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy.  Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005) (quoting

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997)). See also Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a prima facie case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. Longworth, 402 F.3d at 595. See also Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 528 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairment(s) prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 652 (6th Cir. 2009). See also Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1028-29 (6th Cir. 1990); Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 88-89 (6th Cir. 1985); Mowery v. Heckler, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). See also Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Inquiry for Plaintiff

The ALJ found that Plaintiff met the first two steps, TR 18, but was not presumptively disabled because she did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. TR 18-20. However, the ALJ found that Plaintiff's impairments rendered her unable to perform her past relevant work, TR 28, and, thus

triggered the fifth step of the inquiry. At the fifth step, the ALJ found that Plaintiff's RFC allowed her to perform light work with certain limitations as set out in his findings, TR 20-28, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. TR 28-29.

## D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: 1) failing to include a function-by-function assessment in the RFC assessment; 2) failing to include limitations in the RFC which were assigned by Dr. Davis; 3) failing to properly consider the opinion of Jennifer Dible, FNP; 4) failing to properly consider the opinion of Dr. Drummond; and 5) failing to perform a proper credibility analysis with respect to Plaintiff's testimony at the administrative hearing. See Docket Entry No. 9, at 1-2. Thus, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. Faucher v. Secretary, 17 F.3d

171, 176 (6th Cir. 1994). <u>See also</u> <u>Newkirk v. Shalala</u>, 25 F.3d 316, 318 (1994). Plaintiff's

assertions of error are addressed as follows:

1. Function-by-function assessment in the RFC assessment.

Plaintiff argues that the RFC assessment performed by the ALJ was insufficient. Although

Plaintiff acknowledges that the ALJ provided a lengthy RFC assessment, Plaintiff contends that the

ALJ's decision did not include a function-by-function assessment with respect to limitations

regarding pushing and pulling, and that the ALJ failed to include substantial limitations in Plaintiff's

RFC finding correlating to symptoms and limitations which were well-documented in the record.

Thus, Plaintiff argues that the ALJ's RFC does not comport with the requirements of Social Security

Ruling ("SSR") 96-8p and that the matter should be remanded to the ALJ for further consideration

and proper evaluation of Plaintiff's RFC.

SSR 96–8p requires an ALJ to individually assess the exertional (lifting, carrying, standing,

walking, sitting, pushing, and pulling), and non-exertional (manipulative, postural, visual,

communicative, and mental functions) capacities of the claimant in determining a claimant's RFC.

SSR 96-8p provides that an "RFC assessment is a function-by-function assessment based upon all

of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach

function must be considered separately." <u>Soc. Sec. Rul. 96-8p</u>, 1996 WL 374184, at *3, 5.

The Sixth Circuit has held that, "[a]lthough a function-by-function analysis is desirable, SSR

96-8p does not require ALJs to produce such a detailed statement in writing" because there is a

difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion."

<u>Delgado v. Comm'r of Soc. Sec.</u>, 30 Fed.Appx. 542, 547 (6th Cir. Mar. 4, 2002). Significantly, SSR

96–8p states that the ALJ must consider each function separately; it does not state that the ALJ must discuss each function separately in the narrative of the decision. The Sixth Circuit has held that an ALJ's RFC assessment complies with SSR 96–8p so long as the RFC specifies the claimant's exertional and nonexertional limitations. Id. In so doing, the ALJ need only explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform work related activities, and explain the resolution to any inconsistences in the record. Delgado, 30 Fed.Appx. at 548. Further, SSR 96-8P does not require the ALJ to discuss those capacities for which no limitation is alleged. Delgado, 30 Fed.Appx. At 547.

Upon review, the Court finds no error in the ALJ's RFC as asserted by Plaintiff. The ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's testimony and reported level of activity, determined that Plaintiff retained the RFC to "perform light work" as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> limited to occasional lifting and/or carrying of twenty pounds; frequent lifting and/or carrying of ten pounds; standing and walking for six hours in an eight-hour workday and for one hour at a time; sitting for six hours in an eight-hour workday and for four hours at a time; occasional balancing, stooping, kneeling, crawling, and climbing of ramps and stairs; no crouching or climbing of ladders, ropes, or scaffolds; no working at unprotected heights or around unguarded, moving machinery; and no commercial driving. Mentally, the claimant can perform simple, routine, repetitive tasks; respond appropriately to supervisors and coworkers in a job that does not require independent decision-making; and have interpersonal contact that is only incidental to work performance.

TR 20-21. In his decision, the ALJ set out a lengthy discussion of Plaintiff's exertional and nonexertional limitations and explanation of how the evidence in the record supports his conclusion. TR 21-28. The Court finds that the ALJ comprehensively assessed Plaintiff's limitations and included only those limitations that he found supported by the record. The only specific limitations

pointed out by Plaintiff that she contends the ALJ failed to include are a limitation on her ability to push or pull. However, Plaintiff has not identified any specific evidence in the record supporting a defined limitation on pushing and pulling. The ALJ's decision shows that he fully considered all of the relevant evidence in accordance with SSR 96-8p and appropriately explained his decision to include or not include certain limitations in Plaintiff's RFC. There is no merit in this assertion of error.

Although Plaintiff contends that "the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record," Plaintiff does not specifically identify in this assertion of error which "substantial limitations" that "were well-documented in the record" the ALJ omitted. To the extent that Plaintiff, in her other assertions of error, refers to substantial limitations that were omitted, the Court shall address those issues when addressing the other assertions of error.

## 2. The ALJ's alleged failure to include limitations in the RFC which were assigned by Dr. Davis.

Plaintiff asserts that Dr. Davis performed a consultive examination of Plaintiff and assigned several limitations to Plaintiff.[3] Included in these limitations were the limitations that Plaintiff could only stand for 30 minutes at a time and could only walk for 30 minutes at a time. However, the RFC determined by the ALJ only limited Plaintiff to standing for one hour at a time and walking for one hour at a time. Plaintiff contends that the ALJ offered no explanation for why Dr. Davis' more

---

[3] Plaintiff notes that Dr. Davis's limitations were: frequent lifting up to 10 pounds; occasional lifting of 11-20 pounds; occasional carrying up to 10 pounds and 11-20 pounds; sit for 1 hour at a time and 6 hours total; stand for 30 minutes at a time and 4 hours total; walk for 30 minutes at a time and 3 hours total; occasional bilateral operation of foot controls; and all posturals limited to never. See Docket Entry No. 9-1, at 7. See also TR 381-386

restrictive limitations on standing and walking "at one time" were not included in the RFC and for why less restrictive limitations for these activities were included in the ALJ's RFC. Plaintiff argues that this lack of explanation contrasts with the ALJ's specific statements that he did not credit Dr. Davis' extreme postural limitations, noise limitations, and handling and fingering limitations for Plaintiff and that he gave no weight to Dr. Davis' restriction of moderate or less noise. Plaintiff takes the position that the ALJ's failure to specifically explain his variance from Dr. Davis' limitations on "at one time" standing and walking warrants a remand for further consideration of this matter.

The record shows that the ALJ summarized the pertinent findings from Dr. Davis' consultative examination of Plaintiff, TR 23, assessed Plaintiff's physical impairments, TR 26, and then made the following specific findings regarding Plaintiff's physical limitations:

> As for the claimant's physical limitations, the claimant's residual functional capacity has been reduced from medium (as found in the previous hearing decision) to light. This is to accommodate any progression of her impairments, although there is not much evidence to show that there has been any significant worsening. Additionally, postural limitations were added to account for the claimant's decreased range of motion. The undersigned therefore gives some weight to Dr. Davis' medical consultive examination assessment at Exhibit 7F and little weight to the medium assessments of the State agency medical consultants at Exhibits 9F, 12F, and 14F. The undersigned does not credit Dr. Davis' extreme postural limitations, noise limitations, and handling and fingering limitations as they are not supported by the record. There is nothing in the record that indicates that the claimant is not able to ever stoop. In addition, there is no support for any handling or fingering limitations. The claimant has not sought treatment for handling or fingering problems. There is no record of any hearing problems. Therefore Dr. Davis' restrictions of the claimant to moderate or less notice is given no weight.

TR 27.

The ALJ is charged with the responsibility of determining the RFC based on the ALJ's evaluation of the medical and non-medical evidence. Rudd v. Comm'r of Soc. Sec., 531 F. App'x

719, 728 (6th Cir. 2013). It is clear that the ALJ fully reviewed and considered the opinion of Dr. Davis in light of the record as a whole, incorporating some of the limitations opined by Dr. Davis, rejecting some of the limitations, and revising some of the limitations. The lack of a specific explanation by the ALJ for why the limitations on standing and walking "at one time" were slightly revised from the limitations offered by Dr. Davis is not error. Dr. Davis examined Plaintiff on a single occasion on March 30, 2011, for a consultive examination. TR 378-386. His limited interaction with Plaintiff renders him a "non treating" medical source.[4] See Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 876 (6th Cir. 2007); Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx. 496, 506-07 (6th Cir. Feb. 9, 2006) (a single visit does not constitute an ongoing treatment relationship). Thus, the "treating physician rule" does not apply, and the ALJ was not required to give controlling weight to the opinion of Dr. Davis or to "give good reasons" for the weight he accorded to the opinion of Dr. Davis. Smith, 482 F.3d at 875-76. See also 20 C.F.R. § 404.1527(c)(2). The ALJ was not required to specifically incorporate each of Dr. Davis' recommended limitations into Plaintiff's RFC, nor was the ALJ required to specifically explain why he chose to not adopt or to revise the opinion of Dr. Davis with respect to any particular limitation. See Norris v. Comm'r of Soc. Sec., 461 Fed.App'x 433, 439 (6th Cir. 2012) ("a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources."). The ALJ in Plaintiff's case nonetheless provided a satisfactory explanation for the weight afforded to the opinion of Dr. Davis. Substantial evidence supports the decision of the ALJ in this respect. There is no merit in this assertion of error.

---

[4] A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.

14

3. The ALJ's consideration of the opinions from Jennifer Dible, FNP.

Plaintiff argues Jennifer Dible ("FNP Dible"), a family nurse practitioner, completed a Medical Source Statement ("MSS") that included an assessment of a less-than-sedentary RFC and restrictive limitations, TR 666-667, and also provided a letter stating that Plaintiff's conditions are chronic and progressive and that Plaintiff's medications cause side effects that include somnolence and dizziness. TR 668. <u>See</u> Docket Entry No. 9-1, at 9. Plaintiff asserts that, although FNP Dible is not an "acceptable medical source" because of her status of a nurse practitioner, Social Security Rule 06-3p ("SSR 06-3p") permits the evidence from nonacceptable medical sources to be used as evidence to show the severity of Plaintiff's impairments and how they affect Plaintiff's ability to function.

Plaintiff contends that the ALJ failed to properly consider the opinions of FNP Dible and that the only reasoning provided by the ALJ for the lack of weight afforded to the opinions of FNP Dible was a single sentence that:

> the limitations reflected in those assessments are extreme compared to the medical evidence, particularly the claimant's well-controlled pain with medication and consistently normal muscle strength.

TR 27. Plaintiff argues that the ALJ's stated reasoning was not based on the record as a whole and did not comport with the requirements of SSR 06-3p, which lists multiple factors that should be considered when evaluating an opinion from "other sources." Plaintiff asserts that the ALJ ignored these factors and also ignored evidence and factors which supported FNP Dible's opinions. Specifically, Plaintiff asserts that the ALJ ignored the significant relationship that FNP Dible had with Plaintiff, her knowledge and involvement with Plaintiff's treatment at Affiliated Internists, and

treatment records that are consistent with and lend support to FNP Dible's opinion. Plaintiff requests

a remand for proper consider of FNP Dible's opinions pursuant to the requirements of SSR 06-3p.

A nurse practitioner falls into the category of "other sources" who are deemed not

"acceptable medical sources" as defined by the SSA. See Cruse v. Comm'r of Soc. Sec., 502 F.3d

532, 541 (6th Cir. 2007). However, a claimant may nevertheless properly:

> use evidence from other sources to show the severity of your impairment(s) and how
> it affects your ability to work. Other sources include, but are not limited to—
>
>> (1) Medical Sources not listed in paragraph (a) of this section (for
>> example, nurse-practitioners, physicians' assistants, naturopaths,
>> chiropractors, audiologists, and therapists).

20 C.F.R. § 404.1513(d). SSR 06-03p clarifies the manner in which the ALJ should evaluate "other

sources" by explaining that:

> [a]lthough the factors in 20 CFR 404.1527(c) and 416.927(c) explicitly apply only
> to the evaluation of medical opinions from "acceptable medical sources," these same
> factors can be applied to opinion evidence from "other sources." These factors
> represent basic principles that apply to the consideration of all opinions from medical
> sources who are not "acceptable medical sources" as well as from "other sources,"
> such as teachers and school counselors, who have seen the individual in their
> professional capacity. These factors include:
>
> • How long the source has known and how frequently the source has seen the
> individual;
>
> • How consistent the opinion is with other evidence;
>
> • The degree to which the source presents relevant evidence to support an opinion;
>
> • How well the source explains the opinion;
>
> • Whether the source has a specialty or area of expertise related to the individual's
> impairment(s); and
>
> • Any other factors that tend to support or refute the opinion.

Finally, SSR 06–03p provides that:

> [s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

The record shows that FNP Dible was a nurse practitioner at Affiliated Internists & Primary Care ("Affiliated Internist"), a medical care provider where Plaintiff received primary treatment. TR 540-560 and 636-668. The ALJ summarized Plaintiff's treatment at Affiliated Internist in his review of Plaintiff's medical history, TR 21-25, and specifically noted an October 17, 2012, letter that was signed by FNP Dible and another medical provider regarding Plaintiff's treatment. TR 24 and 668. After assessing Plaintiff's physical impairments, TR 26, and setting out his explanation for Plaintiff's light duty RFC and limitations in light of the opinion of Dr. Davis, the ALJ then made the following specific findings regarding the opinion evidence from FNP Dible:

> The undersigned also gives little weight to the medical source statements at Exhibits 20F and 21F from the claimant's treatment provider at Affiliated Internists. The limitations reflected in those assessments are extreme compared to the medical evidence, particularly the claimant's well-controlled pain with medication and consistently normal muscle strength. The treatment provider noted the claimant's deep vein thrombosis. However, as noted above, the claimant was only recently diagnosed with lower extremity deep vein thrombosis on October 17, 2012, so there is no evidence to support that any related severe limitations are expected to last for a continuous period of at least twelve months.

TR 27.

The record shows that the ALJ fully reviewed and considered the opinion of FNP Dible in light of the record as a whole and explained that he gave little weight to the opinion of FNP Dible based upon the ALJ's view that the assessments contained in the opinion were extreme and not supported by the medical evidence. Id. The ALJ specifically noted the evidence of Plaintiff's well-controlled pain with medication and consistently normal muscle strength as factors upon which he found little weight was to be accorded the opinion of FNP Dible. Id.

Further, the paragraph regarding FNP Dible's opinion must be read in conjunction with the preceding paragraph in the ALJ's decision, in which he explains the basis for the light duty RFC and limitations and addresses the RFC and limitations offered by Dr. Davis. When read together, these paragraphs indicate that the ALJ considered and evaluated FNP Dible's opinion within the range of possible RFCs and limitations for Plaintiff, including other opinions favoring less restrictive RFCs and limitations such as those offered by Dr. Davis, TR 378-87, and by the other consultive examiners whose reports were part of the record, TR 393-401, 561, and 563-64, and were considered and given little weight by the ALJ. TR 27.

The Court is not persuaded by Plaintiff's arguments that the ALJ ignored the significant relationship that FNP Dible had with Plaintiff, as well as her knowledge and involvement with Plaintiff's treatment at Affiliated Internists. See Docket Entry No. 9-1, at 12. Although not reflected or explained in the written decision, the ALJ specifically raised this issue at the administrative hearing when he questioned Plaintiff about the length of her treatment relationship with FNP Dible and was informed that FNP Dible had treated Plaintiff once a month for "about a year." TR 56. An ALJ's failure to cite specific evidence does not indicate that it was not considered. Daniels v.

Commissioner, 152 Fed.App'x 485, 489 (6th Cir. 2005); Simons v. Barnhart, 114 Fed.App'x. 727, 733 (6th Cir. 2004).

The Court is also not persuaded that the ALJ ignored treatment records that were consistent with and lend support to FNP Dible's opinion, or are at least not inconsistent with her opinion. See Docket Entry No. 9-1, at 12-13. The ALJ's decision reflects that he fully reviewed Plaintiff's treatment records and gave full consideration to the abnormalities that are noted by Plaintiff in her motion. TR 21-24. While the treatment records contain some evidence that supported the opinion of FNP Dible, the record also contains evidence substantially supporting the ALJ's finding that Plaintiff's pain was controllable with medication, that she had consistently normal muscle strength, and that her impairments did not require the severely restrictive limitations opined by FNP Dible. TR 21-24 and 26. As noted supra, the ALJ in Plaintiff's case was presented with evidence and opinions for a range of RFCs and limitations. In the face of differing evidence and differing opinions as to a claimant's impairments and limitations, it is the ALJ who is ultimately responsible for evaluating this evidence and determining the RFC. Rudd, 531 Fed.App'x at 728; Norris, 461 Fed. App'x at 440. That is what occurred in this case. The explanation standard for evaluating "other source" opinions is not a demanding standard. Morris v. Comm'r of Soc. Sec., 2012 WL 4953118, *11 (W.D.Mich. Oct.17, 2012). The ALJ provided a satisfactory explanation for the weight afforded to the opinion of FNP Dible, and substantial evidence supports the decision of the ALJ in this respect. There is no merit in this assertion of error.

4. The ALJ's alleged failure to properly consider the opinion of Dr. Drummond.

Plaintiff asserts that Dr. Drummond, a psychiatrist at the Mental Health Cooperative ("MHC"), completed a MSS and set out the following recommended limitations: moderate limitation in understanding, remembering, and carrying out simple instructions; moderate limitation interacting appropriately with public, co-workers, and supervisors; moderate limitation in responding appropriately to usual work situations and to changes in a routine work setting; marked limitation in understanding, remembering, and carrying out complex instructions; and moderate limitation in the ability to make judgments on complex work-related decisions. TR 669-670. Dr. Drummond also opined that the claimant's "memory and concentration are severely impaired" and she "always needs a lot of redirection." TR 670. Plaintiff argues that the ALJ improperly gave little weight to the opinion of Dr. Drummond and ignored evidence in the record supporting the limitations found by Dr. Drummond. Plaintiff contends that a remand should be ordered for proper consideration of Dr. Drummond's opinion based on the record as a whole. See Docket Entry No. 9-1, at 13-14.

Specifically, Plaintiff points to three deficiencies in the ALJ's decision to give little weight to the opinion of Dr. Drummond. First, although Plaintiff stated at the administrative hearing that she did not remember seeing Dr. Drummond, Plaintiff contends that the medical records show that Dr. Drummond had seen Plaintiff in May 2012, and had prescribed medication for her from 2009-2012 but the ALJ failed to acknowledge this treatment history. Second, Plaintiff contends that the ALJ's statement that Plaintiff's medical records show good and stable functioning for the last twelve months prior to the decision, TR 27, is contradicted by treatment records dated within the 12 months prior to the hearing documenting paranoia, crying spells "which come in waves," desire to isolate, and grieving the loss of her daughter. TR 621 and 625. Third, Plaintiff contends that the ALJ's

statement that treatment records do not show that Plaintiff's mental health had worsened since her first disability hearing decision of July 2010, TR 27, is contradicted by treatment records documenting Plaintiff's grieving after the death of her daughter in 2011, including increased depression, social isolation, and broken sleep. TR 628. Plaintiff asserts that these grieving symptoms, which were not in existence at the time of the prior hearing decision, were not acknowledged by the ALJ but warrant more restrictive limitations than were assigned in the prior decision.

The record shows that the ALJ summarized the pertinent medical records for Plaintiff's mental health treatment and her hearing testimony, TR 24-26, assessed Plaintiff's mental impairments, TR 26-27, and made the following specific findings regarding Plaintiff's mental impairments and related limitations:

> Overall, the evidence does not show that there has been any real changes (sic) from the previous hearing decision. Despite an isolated period of exacerbated symptoms following the death of her daughter, the claimant consistently reported having stable moods with medication, and it was noted that her anxiety was moderately controlled with Klonopin. Her allegations of extreme limitations, particularly concerning her ability to concentrate and persist, are therefore not supported by her presentation and reports at MHC.

TR 26; and

> The mental assessment from MHC psychiatrist Frank Drummond, M.D., at Exhibit 22F is also given little weight. First, at the hearing, the claimant did not remember ever seeing Dr. Drummond. Second, the mental health records at Exhibit 18F show good and stable functioning for the last twelve months. Overall, treatment records do not show that the claimant's mental health has worsened since the previous hearing decision. The undersigned therefore finds that she has the same mental limitations as assessed in the previous hearing decision. For this reason, little weight is given to the State agency psychological consultants' assessments at Exhibits 6F and 13F as they reflect greater mental abilities than the previous hearing decision.

> Lastly, little weight is given to the CRG assessment and GAF score reflected in the MHC treatment records at Exhibit 10F as subsequent records show that the claimant's moods were stabilized with medication and that her anxiety was moderately controlled with Klonopin.

TR 27-28.

Plaintiff does not argue that Dr. Drummond should be deemed a treating physician whose opinion is entitled to the "treating physician rule," nor does the record support such a finding. Although Dr. Drummond was the named physician for several prescriptions for Plaintiff over her several years of being seen at the MHC, Plaintiff points to only a single instance on May 4, 2012, when Dr. Drummond examined Plaintiff. TR 621. This single visit is not sufficient to render Dr. Drummond a treating source. See Rudd, 531 Fed.App'x at 729; Smith, 482 F.3d at 876; Kornecky, 167 Fed. Appx. at 506-07; Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Thus, the ALJ was not required to give controlling weight to the opinion of Dr. Drummond or to "give good reasons" for the weight he accorded to the opinion of Dr. Davis. Smith, 482 F.3d at 875-76. See also 20 C.F.R. § 404.1527(c)(2). The ALJ is not required to explain or list reasons for discounting the opinions of nontreating medical sources. Smith, 482 F.3d at 876; See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541 (6th Cir. 2004).

Nonetheless, the record shows that the ALJ fully reviewed and considered the opinion of Dr. Drummond in light of the record as a whole and explained that he gave little weight to the opinion of Dr. Drummond based upon his view of a limited treatment relationship between Plaintiff and Dr. Drummond, medical records from the MHC showing good and stable functioning during the prior 12 months, and treatment records that, overall, show that Plaintiff's mental health had not worsened since the prior hearing decision. TR 27-28.

The Court is not persuaded by Plaintiff's arguments that error existed because the ALJ failed to acknowledge Dr. Drummond's single visit with Plaintiff and his record of being the prescribing physician for medications for Plaintiff. See Docket Entry No. 9-1, at 14. Although the ALJ did not specifically note any of these records in his decision, his decision notes his review of the treatment records from the MHC by reference to Exhibits 10F and 18F. TR 24-25. His failure to cite to the specific records noted by Plaintiff does not indicate that they were not considered. See Daniels, 152 Fed.App'x at 489; Simons, 114 Fed.App'x. at 733. Further, the ALJ's reference to Plaintiff's hearing testimony that she did not remember ever seeing Dr. Drummond, TR, 27, was an accurate summary of her hearing testimony on this issue. TR 64. While her testimony may have been in error given the single visit she had with Dr. Drummond, it nonetheless supports the conclusion of a minimal treatment history and reflects that the ALJ inquired into the treatment relationship between Plaintiff and Dr. Drummond.

The Court is also not persuaded by Plaintiff's contention that the medical records do not support the basis provided by the ALJ for giving little weight to the opinion of Dr. Drummond. See Docket Entry No. 9-1, at 14. The ALJ's decision reflects that he fully reviewed Plaintiff's mental health treatment records. TR 24-25. Further, he specifically noted in his decision "a worsening in [Plaintiff's] depression following the death of her daughter" TR 25., and "an isolated period of exacerbated symptoms following the death of her daughter." TR 26. Thus, Plaintiff's contention that the ALJ failed to acknowledge medical evidence inconsistent with his stated reasons for giving little weight to the opinion of Dr. Drummond is not supported by the record. Further, while there are treatment records documenting that Plaintiff suffered, at times, from the adverse mental health symptoms noted by Plaintiff in her motion, primarily in the aftermath of the death of her daughter,

the record also contains evidence substantially supporting the ALJ's finding that her mental health symptoms were stabilized and moderately controlled with medication, that there was no real, overall change in her mental health from the prior hearing decision, that she had good and stable functioning for the twelve months prior to the decision at issue.  TR 528, 533-537, 614-620, and 631-32.  The ALJ provided a satisfactory explanation for the weight afforded to the opinion of Dr. Drummond, and substantial evidence supports the decision of the ALJ in this respect.  There is no merit in this assertion of error.

5. The ALJ's alleged failure to perform a credibility analysis of Plaintiff.

Plaintiff argues that the ALJ did not adequately evaluate and assess her credibility as required by Social Security Ruling 96-7P ("SSR 96-7P") and did not specifically state the weight he gave to Plaintiff's statements and the reasons for that weight, as Plaintiff argues is required by SSR 96-7P. Plaintiff contends that the ALJ was not permitted to simply dismiss her testimony as not credible and was required to make specific findings as to Plaintiff's credibility that went beyond merely reciting the criteria set out in SSR 96-7.  Plaintiff asserts that the ALJ stated in his decision that the Plaintiff performs multiple daily activities and used this to imply that the Plaintiff is more active than alleged. Plaintiff argues that the ALJ erred by placing excessive emphasis on the Plaintiff's minimal activities and mischaracterized Plaintiff's activities.  Plaintiff submits that the ALJ's deficiency with respect to credibility analysis constitutes material error.  See Docket Entry No. 9-1, at 15-16.

The ALJ is charged with evaluating the credibility of Plaintiff at the administrative hearing, and the ultimate decision of credibility rests with the ALJ.  The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her

subjective complaints." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). The ALJ's credibility determinations are not lightly discarded, Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1234 (6th Cir. 1993), and the "ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." Tyra v. Sec'y of Health & Human Servs., 896 F.2d 1024, 1030 (6th Cir. 1990). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." Wines v. Comm'r of Soc. Sec., 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing Felisky v. Bowen, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Plaintiff correctly notes that SSR 96-7p requires the ALJ to articulate specific reasons for a finding that a claimant is not fully credible, and not to merely make a single, conclusory statement that the claimant is not credible, or that the factors affecting credibility have been considered and the claimant's testimony is rejected. The ALJ must explain his credibility determination such that both Plaintiff and subsequent reviewers will know the weight given to Plaintiff's statements and the reason for that weight. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 248 (6th Cir. 2007); SSR 96-7p. Consistency between Plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." Rogers, 486 F.3d at 247-48; Kalmbach v. Comm'r of Soc. Sec., 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011).

After the ALJ summarized Plaintiff's physical and mental health treatment history, TR 21-25, and the hearing testimony, TR 25-26, the ALJ discussed Plaintiff's credibility as follows:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

Overall, the evidence does not show that there has been any real changes from the previous hearing decision. Despite an isolated period of exacerbated symptoms following the death of her daughter, the claimant consistently reported having stable moods with medication, and it was noted that her anxiety was moderately controlled with Klonopin. Her allegations of extreme limitations, particularly concerning her ability to concentrate and persist, are therefore not supported by her presentation and reports at MHC.

The claimant's physical impairments are also not disabling. Despite some abnormal objective findings, per the claimant's own report her pain was no more than moderate in severity with medication even on bad days, and she consistently had normal motor strength. By October 2011, her symptoms were well-controlled with medication, and she endorsed an effective level of analgesia, even rating her pain as low as a two on a ten-point scale. She later complained of ineffective analgesia, but this was apparently based on her not being prescribed enough medication to provide pain relief for a full twenty-four hours. Based on the letter provided by a treatment provider at Affiliated Internist, the claimant's medications helped maintain her pain control and allowed her to better perform daily living activities and function throughout the day. At the hearing, the claimant testified that she used a cane periodically that was not prescribed but recommended. However, no such recommendation is reflected in the treatment records.

TR 26-27.

The Court finds no error in the ALJ's credibility assessment. There is no indication in the ALJ's decision that credibility was assessed solely upon an "intangible or intuitive notion about [Plaintiff's] credibility" as is prohibited by SSR 96-7p. Nor does the Court agree with Plaintiff that the ALJ made a blanket assertion that Plaintiff was not credible and failed to support his assertion without reference to or support in the record. At numerous points in his review of Plaintiff's treatment history, the ALJ analyzed and reviewed Plaintiff's symptoms of impairment in terms of their location, frequency, duration, and intensity, the effectiveness of treating her symptoms with

medication, any side effects caused by the medication, specific physical and mental characteristics exhibited by her despite the symptoms, her abilities to perform activities of daily living, and any factors that precipitated or aggravated her symptoms. TR 22-25. This analysis and review complies with directives of SSR 96-7p. The ALJ found that the record was contradictory to Plaintiff's subjective complaints of extreme symptoms and limitations, and thus concluded that Plaintiff's hearing testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible. TR 26.

Although Plaintiff contends that the ALJ's credibility finding is not sufficient, the Court does not find this to be the case. The ALJ set out specific reasons for his credibility determination and those reason are supported by substantial evidence in the record. The Court also finds no support in the record for Plaintiff's contention that the ALJ placed "excessive emphasis on" and "mischaracterized" Plaintiff's ability to engage in daily activities. See Docket Entry No. 9-1, at 16.

Because the Court finds that the ALJ committed no error in his credibility determination and because his determination is supported by substantial evidence, the Court must defer to the ALJ's determination of Plaintiff's credibility. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997).

## IV. RECOMMENDATION

For the above stated reasons it is recommended that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 9) be DENIED and that the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge